Maxwell v. Durkin.

·James Maxwell and Henry B. Maxwell, Copartners as Maxwell Bros., v. Agnes Durkin, by Her Next Friend.

1. NEGLIGENCE—*When a Question for the Jury.*—Where reasonable and fair-minded men might reach different conclusions, under all the circumstances shown in the evidence, the question as to whether defendant was guilty of negligence is one for the jury to decide.

2. SAME—*Prima Facie Case—City Ordinances.*—A person proved guilty of allowing horses to run loose upon the streets, in violation of a city ordinance, is *prima facie* guilty of negligence, and is bound to overcome it in order to successfully defend.

3. APPELLATE COURT PRACTICE—*Insufficiency of the Abstract.*—Where large portions of the evidence and proceedings of the court are either not abstracted at all or so insufficiently abstracted that the court is unable to form any definite opinion on these matters by reading the abstract alone, this court will be justified in affirming the judgment.

Action for Personal Injuries.—Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in this court at the March term, 1899. Affirmed. Opinion filed January 4, 1900.

MEEK, MEEK & COCHRANE, attorneys for appellants.

BRANDT & HOFFMANN, attorneys for appellee.

MR. JUSTICE WINDES delivered the opinion of the court.

Agnes Durkin, a child aged eight years, was on June 26, 1894. injured—her left leg being broken, which it is claimed caused a permanent tipping of the pelvis and curvature of the spine—by two horses of appellants at the crossing of Ashland avenue and Twentieth street, Chicago, she being run over by the horses while on her way home from school.

A trial before the court and jury resulted in a verdict and judgment in her favor of $3,000, from which this appeal is prosecuted.

The first and second counts of the declaration are based upon an ordinance of the city imposing a penalty for permitting animals to run at large, the first count charging

reckless and wanton negligence, and the second charging simply careless and negligent conduct of defendants in suffering and permitting said horses to run at large on the streets of Chicago; also the second additional count, which further charges, after setting up the ordinance, that appellants carelessly and negligently suffered the horses to escape from their custody and control and to go at large on the streets, and that appellee, without fault, etc., was struck and run over by the horses. The first additional count charges that appellants carelessly and negligently suffered the horses to escape from their custody and control, and to travel loose and without control on the highways, etc.; and that plaintiff, who was then eight years of age and incapable of exercising much care for her safety, was, without fault or negligence on her part, and by reason of the careless and negligent conduct of appellants, struck by one or both of said horses, which ran against her and caused the injuries complained of. The plea was the general issue.

At the close of plaintiff's evidence appellants moved to exclude the evidence from, and also to instruct the jury to find the defendants not guilty, which motions were both overruled, but were renewed at the close of all the evidence and were again overruled.

Among other instructions on behalf of appellants, the court instructed the jury, in substance, that the only issue upon which the plaintiff could recover was that the defendants carelessly and negligently suffered the horses to escape from their custody or control and permitted said horses to go at large, etc., and that to sustain this issue the plaintiff must prove not only that the horses got loose, but that they got loose by reason of the defendants' servant's negligence, thus, in effect, precluding the plaintiff from any right to recover under the first count of the declaration, which charged defendants with wanton negligence. No cross-errors are assigned.

Numerous instructions were given by the court, at the request of the defendants, which were as favorable to them as could have been asked under the law and the evidence

Maxwell v. Durkin.

of the case. The court also refused, among others, five instructions asked by defendants, which will be referred to later.

The substance of the matters complained of by appellants is, first, that there was no case for submission to the jury under the evidence, because, it is claimed, there was no evidence of care on the part of plaintiff, nor of negligence of the defendants; second, that there was a variance between the allegations and proofs; third, that the damages were excessive and the result of improper conduct and remarks of counsel for plaintiff; fourth, that there was error in rulings as to the admission and exclusion of evidence; and, fifth, error in the refusal of instructions asked by defendants.

As to the first claim, it seems sufficient to say that, after a careful consideration of the evidence, in the light of the briefs and arguments of counsel, the case presents only matters of fact as to whether the evidence shows an exercise of such care on the part of plaintiff and such negligence on the part of defendants as would justify the court in submitting the case to the jury. We think that, upon both these points, there was sufficient evidence to justify its submission to the jury.

As to the care of the plaintiff, it appears that she was one of six or seven children who were crossing Ashland avenue at its intersection with Twentieth street, on their way home, having just been let out of school, and were in the middle of the street when appellants' horses came running along the street, one of the witnesses says, "about as fast as they could go," and another of the witnesses, that the horses "were on a gallop—were running away—ran right through the rank of them" (referring to the children). We think this evidence, considering the age of the plaintiff, was sufficient, not only to justify the court in submitting the case to the jury on the question of plaintiff's care, but was also sufficient to sustain the verdict of the jury in that regard. The law is plain as to the court's duty in this respect, and the citation of authority to support its action in this regard is unnecessary.

On the question of negligence, in so far as the evidence tends to show how the horses came to be running on the street at the time and place of the accident, only two witnesses, Smith and Steiner, testify. Their evidence is in direct conflict, and it is unnecessary to set it forth in detail. It appears that, at the time in question, the horses, which were lively and spirited, were driven, attached to a sleigh, by Steiner, who was appellants' employe and driver, into a livery stable, kept by one Bradford, where appellants were in the habit of keeping their carriages and sleighs, had them washed, oiled and cared for there, had their horses harnessed and unharnessed there, and which was used by appellants for every purpose except keeping their horses there; that Steiner unhitched the horses from the sleigh and proceeded to unharness them, and while so doing the horses escaped from him and ran out through a side or back door of the stable, through an alley, and thence onto the street, where they, or one of them, ran over the child. If the evidence of Smith as to how the horses escaped from Steiner was true, we are of opinion that it alone made a *prima facie* case of negligence on the part of Steiner, and it was therefore the duty of the court to submit the case to the jury on this point. Smith, so far as appears from the evidence, was entirely disinterested. Steiner's evidence as to how the horses escaped from him tended to show that he was not negligent in allowing the horses to escape, but even taking his own statement, we are of the opinion that reasonable and fair-minded men might have reached different conclusions as to whether, under all the circumstances shown in the evidence, he was negligent, and that being so, it was for the jury, and not the court, to say whether or not he was negligent. Moreover, he was to a degree an interested witness. It would be but natural for him to desire to appear to his employers as a careful and trustworthy driver, as well as to relieve himself from all blame for the very serious accident to the plaintiff, and therefore the weight to be given his evidence was a matter peculiarly for the consideration of the jury.

There was also evidence on behalf of defendants to the effect, in substance, that the manner in which Steiner testified that he unharnessed and handled the horses was the usual and customary method of careful business men of doing that thing in the city of Chicago in 1894 and since; and the court, at the request of defendants, in substance, instructed the jury that if they believed from the evidence the horses were handled and unharnessed, at the time they escaped, in the usual and customary manner in which such work was done by ordinary prudent livery men, or men accustomed to handling horses in the city of Chicago under like circumstances, then they should find the defendants not guilty. Even if this class of evidence was competent or proper, which we think doubtful, though it is unnecessary to decide in this case, there being no cross-errors assigned, the question still remains as to what, in fact, was the manner in which Steiner handled and harnessed the horses. On this question we are of opinion that the jury were justified in believing the testimony of Smith as to what Steiner did in handling and unharnessing the horses, and in disbelieving Steiner; and it was a question for the jury to determine, after having decided the manner in which the horses were handled and unharnessed, whether or not that manner was careless or negligent. We are not prepared to hold that the verdict is against the weight of the evidence on this point.

1st. The ordinance being declared on, and in evidence, and the plaintiff having shown that appellants' horses were loose upon the streets, the accident, and due care on her part, that proof made a *prima facie* case of negligence as against appellants, which they were bound to overcome in order to successfully defend. Bulpit v. Matthews, 145 Ill. 345–54; R. R. Co. v. Dunleavy, 129 Ill. 140; Weick v. Lander, 75 Ill. 96; R. R. Co. v. Ashline, 171 Ill. 314–19; R. R. Co. v. Fell, 79 Ill. App. 376–8; Morris v. Stanfield, 81 Ill. App. 264–70; R. R. Co. v. Argo, 82 Ill. App. 667–70.

2d. We are unable to appreciate the argument of appellants' counsel to the effect that there was a variance

between the allegations of the declaration and the proof. No such variance is specifically pointed out in counsel's brief and argument, nor have we been able to discover from the abstract where it is shown. Under such circumstances repeated decisions of this and the Supreme Court hold that the variance, if any, is waived.

3d. On the question of the excessiveness of the damages the evidence is conflicting. We would feel better satisfied had the verdict been for a smaller amount, but we are not prepared to say, from a consideration of the whole evidence, that the amount found was the result of passion, prejudice, mistake or misapprehension on the part of the jury. If the jury believed the evidence on the part of the plaintiff, then the verdict was clearly justified. Dr. Blanchard, a witness on behalf of appellee, a physician and surgeon of thirty years' experience, and for seven years connected with Mercy Hospital, Chicago, and who had, for five or six years, been the surgeon for the Home of Destitute Crippled Children, having as many as twelve or fifteen crippled children under his observation every week, testified that the left thigh bone of plaintiff had been fractured just above the middle; that there had been a strong union; that the union was, to a certain extent, vicious, and the bone bowed out half an inch or more than the normal curve; that such condition always changes the walking movement of the body, and that the shortening of this bone was upwards of three-quarters of an inch; that there was a large callous around the fracture, and that the shortening had the effect of tipping the pelvis downward; that the pelvis, in turn, holds the spine, and the spine is tilted to the left, deviating about one-half an inch from the perpendicular; that this condition makes a difference in the general contour of the body; changes the shape of the shoulders; that the curvature of the spine has a bad effect on the general health, acts more or less at present, in the case of the plaintiff, on the nervous system, displaces, to a certain extent, all the organs of the trunk of the body, as relative positions are always changed as soon as the relative posi-

tions of the spine are changed; also that the condition of plaintiff was permanent. It further appears that plaintiff was in bed from her injury five weeks; that she was carried around on a board for three or four weeks longer, and after that, crept around the floor for about two weeks; and that since she has been able to go about, she has dragged the limb and favored it; that she hangs over to one side; that the shoulder hangs over and the hip is over, and that there is a curve in the back.

· On the part of appellants there was evidence tending strongly to show that the conditions testified to by Dr. Blanchard and the other witness for appellee, her mother, as to the injuries, did not exist to the extent stated. It also appears that plaintiff was in the court room, though she was not placed upon the stand; that defendants' counsel asked that an examination of her by physicians be permitted, which was not allowed by the court, though there was no objection interposed by appellee's counsel; but we are unable to say, upon a consideration of all the evidence and the circumstances attending the trial, including the conduct of counsel, which will be hereinafter more particularly referred to, that it is our duty to interfere with the amount of damages.

As the abstract has been prepared by appellants' counsel, it is insufficient to show all the material and important evidence bearing upon the issues of the case and the questions raised. Especially is this true as to the conduct and remarks of counsel for appellants and the evidence bearing upon the negligence of defendants. It is apparent, from the most casual examination of the abstract and record, that large portions of the evidence and proceedings of the court are either not abstracted, or so insufficiently abstracted that the court is unable to form any definite opinion on these matters by reading the abstract alone. Without noting particularly the matters thus improperly abstracted, we refer to the following pages of the record and the same pages appearing in the margin of the abstract, viz.: 63 to 69; 73, 86, 96; 143 to 145; 157 to 160; 385 to 396; 444, 466,

525, 532, 575, 582 and 588. This insufficiency of the abstract would alone have justified us, under repeated decisions of this court and the Supreme Court, in affirming the judgment; but inasmuch as the point has not been made, we have seen fit to examine the record somewhat.

The conduct and remarks of counsel for appellee from time to time, during the progress of the trial, were unbecoming, and certainly did not conduce to orderly and dignified proceedings in the trial of the cause. He frequently commented upon the testimony of witnesses, on many occasions charging the witness, in substance, with testifying untruthfully, and also charging counsel for appellants with endeavoring to induce the witness to testify as to matters which appellee's counsel openly charged that the witness knew nothing about. He also, on several occasions, impliedly, if not directly, charged appellant's counsel with stating untruths in the presence of the court and jury with regard to the evidence in the case. He further indulged, during the progress of the trial, in sarcastic and flippant remarks with regard to opposing counsel and witnesses, and even as to the rulings of the court, which were calculated to improperly influence the jury and induce in the minds of the jury disrespect, if not contempt, for courts and the administration of the law.

Counsel for appellants, however, was, in our opinion, equally to blame. He also, by numerous, and oftentimes by trivial objections to evidence, interrupted the orderly progress of the trial and a proper dispatch of the public business, and indulged in flippant and sarcastic remarks in the presence of the court and jury as to the opposing counsel, and also as to the testimony of witnesses, and frequently made insinuating, as well as direct charges that appellee's counsel had made untruthful statements in the presence of the jury as to the evidence of witnesses, and that he also endeavored to cause witnesses to testify untruthfully. On two occasions, in examining appellee's witnesses, he characterized the witness in his question as a "chambermaid in a livery stable."

So reprehensible was the conduct and remarks of counsel, both for appellants and appellee, that it brought forth frequent remonstrances and rebukes from the trial court, and in one instance the court said to appellants' counsel, "You have paid no heed to the injunction of this court repeatedly given you, and if your conduct is persisted in, much as I dislike to do so, I shall have to inflict punishment by fine." On another occasion the court said, "If these things continue I shall just impose a fine on each of you" (referring to both counsel), "and it will be collected, too." From an examination of the record, we think the court would have been justified in imposing fines on both the counsel.

It would unduly extend this opinion to set forth any more specifically the improper remarks and conduct of counsel, and we therefore refrain from further particularizing. Had appellants' counsel conducted himself in a manner which was respectful to the witnesses and opposing counsel, and had refrained from all unbecoming and improper conduct in the progress of the trial, a very serious question would have been presented as to whether it was our duty to interfere with the verdict and judgment in favor of appellee because of the improper and unbecoming conduct and remarks of her counsel in the trial; but we are of opinion, from the matters above stated, that appellants are precluded, by the conduct and remarks of their counsel, from complaining because of the remarks and conduct of appellee's counsel. We also think that orderly, dignified and respectful conduct on the part of both counsel should have been enforced, and if necessary the court should have promptly imposed such punishment as would have secured that result. Notwithstanding the misconduct of appellants' counsel, we should not hesitate to award a new trial were it apparent that the judgment and verdict were the result of the improper conduct and remarks of appellee's counsel.

4th. Complaint is made that appellants were not allowed by the court to prove, by the witness Steiner, what was the usual and customary way of unharnessing horses

with harness of the kind on the horses in question, in the city of Chicago at the time of the accident; but we think the error, if any, in that regard, was cured by the witness subsequently testifying as to the manner in which he unharnessed the horses, and stating, as he did, "that is the way it is done all over; I have always seen it done that way every place. It can't be done any other way." Appellants were also allowed to show, by several other witnesses, what was the usual and customary way of doing such work in Chicago at that time and both before and after.

Complaint is also made that the court erred in permitting appellee to introduce in rebuttal evidence to the effect that different halters were used upon the horses on the day and at the time of the accident than those testified to by appellants' witnesses; also evidence as to the habit of Steiner, with reference to leaving these horses standing in the stable from which they escaped without their halters on, and after they had been unharnessed, at times as remote as two years previous to the day of the accident; also as to the horses running out of the stable when they had nothing on them at different times before the injury.

We think there was no error in either of the respects mentioned, because appellants had produced evidence in chief on the same matters in the direct examination of their witnesses. It is unnecessary to set out the evidence in detail.

We are also of opinion that, even if the evidence was not strictly rebuttal, it was material, as bearing upon the charge of negligence, and it was within the discretion of the trial judge to admit it at the time it was admitted. We see no abuse of discretion in the court's rulings in that regard.

5th. The refusal of the instructions of which complaint is made, was not, in our opinion, erroneous. It is unnecessary to set them out in this opinion. The ones numbered eight and ten took from the jury a consideration of certain matters in evidence bearing upon the question of defendants' negligence. The eleventh instruction is in substance covered by instructions one and nineteen, which were

given.   The twentieth instruction is covered in substance
by instructions fifteen, seventeen and eighteen, which were
given.   The twenty-seventh refused instruction was with
reference to the credibility of the testimony of plaintiff on
account of her interest in the result of the case.   The plaint-
iff did not testify in the case, and it is surprising, to say the
least, that appellants' counsel would claim that it was error
to refuse this instruction.

It is also claimed that had the jury followed instructions
numbers six and fifteen, given for appellants, they must
have found a verdict of not guilty.   These instructions are
given with reference to appellants' testimony that the
horses were handled and unharnessed in the usual and cus-
tomary manner.   What we have hereinbefore stated with
reference to that evidence, we think, fully disposes of the
contention made as to the verdict in view of these two
instructions.

There being no reversible error in the record, the judg-
ment is affirmed.