## Chicago City Railway Company v. Catherine McDonough, Administratrix.

### Gen. No. 12,126.

1. RIGHT OF RECOVERY—*particular instruction upon, held not ground for reversal.* The following instruction pertaining to the right of recovery, held, in connection with the other instructions given in the cause, not ground for reversal:

"You are instructed as a matter of law that if you find from the evidence that the defendant has been guilty of negligence, and that such negligence caused the injury to the plaintiff's intestate complained of in the first, second, third and sixth counts of the amended declaration, or any one of said counts, and that before and at the time of such injury the plaintiff's intestate was in the exercise of ordinary care for his personal safety, then your verdict will be for the plaintiff."

2. NEGLIGENCE—*instruction as to how question of, should be determined, held not reversible error.* The following instruction upon this subject held, in connection with the other instructions given in the cause, not ground for reversal:

"You are further instructed, as a matter of law, that the question of whether or not the defendant was guilty of negligence is for your determination upon all the circumstances and facts proven in the case."

3. RES GESTÆ—*what part of.* The motorman's treatment of a signal of danger and his remark made in connection therewith are competent as part of the *res gestæ.*

4. SPEED—*what evidence upon subject of, not ground for reversal.* The statement of a witness that the car at the time of the accident in question was going at "full speed" is not of such a character as calls for a reversal.

5. RULES AND REGULATIONS—*when competent.* The rules and regulations of a traction company known as well to the party injured as to the servant alleged to have caused the injury and which were promulgated for guidance in such a contingency as that existing at the time of the accident, are competent upon the question of the contributory negligence of the one and the negligence of the other.

6. REMARKS OF COUNSEL—*when improper, will not reverse.* Improper remarks of counsel which have been objected to are not ground for reversal where such objection was sustained and counsel making such remarks rebuked, unless injury appears to have resulted.

7. CONDUCT OF JUDGE—*what not improper.* The remark of the trial judge to the effect that he would adjourn court if necessary to allow plaintiff's counsel to secure the attendance of a desired witness is not improper and consequently will not reverse.

8. CONDUCT OF JUDGE—*what not reversible error.* The trial judge is permitted to exercise a discretion in regulating the arguments of counsel and unless he abuses such discretion a reversal will not follow. In this case it is held that the refusal of the trial judge to permit counsel to use a manuscript in his argument to the jury was not an abuse of discretion.

9. HIGH RATE OF SPEED IN A FIRE ENGINE—*not negligence.* It is not proof of negligence that a fire engine is driven to a fire at a higher rate of speed than is allowable in the streets for a private carriage.

BALL, J., dissenting.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed December 4, 1905.

**Statement by the Court.** The plaintiff below, the appellee here, secured in the Circuit Court of Cook County a judgment of $5,000 against the Chicago City Railway Company, the defendant below and appellant here, under the statute allowing damages to the personal representatives of a deceased person for the benefit of the next of kin for causing the death of the deceased by wrongful act, neglect or default.

The cause was tried before a jury and the judgment was rendered on their verdict after a motion for a new trial and a motion in arrest of judgment had been made by the defendant and denied by the court, and exceptions taken to said action. A motion by the defendant was made and denied after the plaintiff's evidence was concluded, and renewed and again denied after the conclusion of all the evidence, for an instruction that the jury should find for the defendant.

The deceased, Bernard McDonough, at the time of his death was 51 years old. He left a wife and five minor children. He was a member of the fire department of the city of Chicago and had been so for 22 years. He was lieutenant of company 49, the crew of the fire engine of which on the night of the accident which resulted in his death, consisted of himself and three other persons—Mesbauer, the driver, and Roe and Drews, engineers, firemen, or other employees of the department. During the night of September 27, 1900, an alarm of fire was received at the engine house of company 49, which was at 1742 47th street, about 125 feet west of Marshfield avenue. It was not far from half past ten o'clock. The fire was at the corner of 51st street and Centre avenue, a little more than half a mile east of the engine house and just half a mile south. The hose cart left the house first under the charge of the captain of the company. The fire engine followed shortly after, but the start of the hose cart made it precede the engine by something more than a block. Both hose cart and engine ran east on 47th street, turned south on Marshfield avenue and east again on 51st street, which was the only paved street and the only one with railroad tracks in it between 47th street and 55th street. It has a double track, and the fire engine swung into the south track on its way eastward. Both hose cart and engine carried lights and a gong. The engine was in charge of the deceased, Bernard McDonough, who sat with the driver and had control of the speed and direction of the engine, the driver as well as the rest of the crew being under his orders. Ashland avenue is the next north and south street east of Marshfield avenue, and on it there are double car tracks of the appellant, crossing 51st street and extending from 69th street to Archer avenue. An electric motor car of the appellant corporation coming north on the east track ran into the engine at the crossing at 51st street. It struck the hind wheel of the engine (between the front and rear wheels, the motorman says) after the horses attached to it had cleared the track. The hub of the hind south wheel and one of the spokes were bent and the axle was badly

sprung.    The engine tilted to the north and all the men were thrown off.    McDonough was seriously injured and was taken to the hospital, where he died from his injuries three days later.    The other men were hurt less seriously.    The engine righted itself and the horses ran eastward with it without a crew or driver.    The headlight of the car was knocked off, the fender and dashboard bent, the front forward trucks thrown off the track and a part of the flange of the wheel broken off.    It was able, after being replaced on the tracks by the wrecking crew, to go to the barn by its own motive power.

These facts connected with the accident are undisputed. Other material circumstances, concerning which there is a conflict in the testimony, will be alluded to in the opinion so far at it seems necessary.

For the declaration in the cause as originally filed, there was substituted an amended declaration in eleven counts, and after an amendment of one of them the cause went to trial on these eleven counts and the general issue filed to them.    At the conclusion of the plaintiff's evidence, however, the court, although refusing to take the case from the jury, instructed the jury that the plaintiff had failed to make out a case under the 4th, 5th, 7th, 8th, 9th, 10th and 11th counts of the declaration, thus leaving to go to the jury only the 1st, 2nd, 3rd and 6th counts.

The first count alleged the duty of the defendant to be to run and operate the car at a moderate and reasonable rate of speed in approaching and passing over said crossing at night, and stated the breach of it to have been in running the car at an unreasonable and dangerous rate, and not using the care and prudence which the safety of those likely to be imperiled by the running of said car demanded, whereby the deceased, while in the exercise of due care and diligence and while doing his duty as a member of the fire department, was killed.

The second count stated the defendant's duty to be to cause the car to be run under such control and lessened speed in approaching and passing over said crossing, that the motor-

man could stop it within a reasonable distance upon the appearance of danger to others, and the breach of it causing the accident to have been that the car was not run under such control and lessened speed.

The third count declared the same result to have been caused by the breach of the defendant's duty to cause a bell or gong on the car to be rung or sounded just before the car ran upon said crossing, and to keep said bell or gong constantly sounded while said car approached the crossing.

The sixth count declared the breach of duty causing the injury to be in the servants of defendant negligently, carelessly and improperly failing to watch and look out for the approach or passage of fire engines upon said street over said crossing, and failing to look to see if said crossing was and would then and there be clear for the passage of said car, and failing to try to ascertain if it would be so clear, and giving no more attention and exercising no more watchfulness as to whether the track ahead of said car was clear while it was approaching and passing said crossing than at other places on the route of said car.

From the judgment of the Circuit Court the Chicago City Railway Company appealed to this court, and here assigns and argues alleged errors involving the following propositions: That improper evidence in behalf of the appellee was admitted on the trial; that erroneous instructions were given to the jury; that appellant was prejudiced and deprived of a fair trial by improper utterances of the trial judge and of the counsel for appellee before the jury; and that the verdict was against the clear weight of the evidence.

WILLIAM J. HYNES, SAMUEL S. PAGE and WATSON J. FERRY, for appellant; MASON B. STARRING, of counsel.

I. T. GREENACRE, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

The jury in this case had close and doubtful questions of fact to decide on conflicting evidence. It was very necessary, therefore, that they should be correctly instructed as to

the law, and that nothing should have been erroneously admitted in evidence or allowed to happen before them which it is apparent might have misled them. But after a careful examination of the matters complained of by the appellant, we fail to find in them anything which could reasonably be supposed to have had such an effect.

Appellant asked from the court thirty-nine instructions, thirty-three of which were given as asked, two of which were modified, and four of which were refused. The appellant does not here complain of the refusals or modifications. The instructions which were thus given at appellant's request very completely covered the law necessary for the jury to know. The first seven of them respectively informed the jury that the plaintiff had failed to make out a case under the 4th, 5th, 7th, 8th, 9th, 10th and 11th counts of her declaration, and that therefore they should disregard those counts altogether.

The next instruction given at the request of appellant tells the jury that the plaintiff cannot recover at all unless they find that she has proved by a preponderance of the evidence that the deceased was not guilty of any want of ordinary care, prudence and caution for his own safety which proximately contributed to the alleged injury, and that the defendant *was guilty of some particular negligence charged in some count of the declaration submitted to the jury.* The jury were further instructed that the burden of proof was not upon the defendant to show that it was not guilty of the specific charges of negligence in the counts submitted for their consideration, but that the burden of proof was upon the plaintiff to show by a preponderance of evidence that the defendant was so guilty.

We think, therefore, that as all the instructions are those of the court and must be taken and considered as one connected series, of which obligation the jury by instructions given by the court of its own motion, was explicitly informed, there can have been no harm done by the lack of precision excluding ambiguity in the first instruction given at the request of appellee. It is:

City Railway Company v. McDonough.

"You are instructed as a matter of law that if you find from the evidence that the defendant has been guilty of negligence, and that such negligence caused the injury to the plaintiff's intestate complained of in the first, second, third and sixth counts of the amended declaration, or any one of said counts, and that before and at the time of such injury the plaintiff's intestate was in the exercise of ordinary care for his personal safety, then your verdict will be for the plaintiff."

That this instruction is capable of a construction which removes the objection made by appellant, that it does not restrict the negligence for which the plaintiff can recover to that mentioned in the declaration, is evident if we insert parenthesis marks around the clause "and that such negligence caused the injury to the plaintiff's intestate." Making this a parenthetical clause would plainly show the following clause, "complained of in the first, second, third and sixth counts of the amended declaration, or any one of said counts," to limit the word "negligence" and not the word "injury." That this instruction might be construed so as to state a correct principle of law would not by itself—if it could be construed in a different sense—remove the objection to it or render it harmless; but when it is considered that it would be very unnatural for the "injury to the plaintiff's intestate" to be characterized as "complained of in the first, second, third and sixth counts of the declaration, or any one of said counts" (since the injury to the plaintiff's intestate was described in exactly the same words in all four counts), but that it would be very natural that "negligence" of the defendant should be so characterized, and when to that consideration is added the fact that the proposition of law which the correct construction of this instruction would make it state was very explicitly given to the jury in two other instructions of the series, which also explicitly negative the erroneous proposition which appellant's counsel allege can be found in it, we think it is clear that there can be no reasonable ground for fear that it misled the jury. or was misunderstood by them.

As to the third instruction, the only other one attacked by the appellant, which is as follows: "You are further instructed, as a matter of law, that the question of whether or not the defendant was guilty of negligence is for your determination upon all the circumstances and facts proven in the case,"—it is plain also that if the jury understood from the instructions as a series, as we think they did, that the "negligence" with which they were concerned was only the negligence "complained of in the first, second, third and sixth counts of the declaration, or some one of them," the instruction was harmless, and indeed entirely accurate. Our view of the harmlessness of these instructions in connection with the others given is supported by the authority of the Supreme Court in similar cases: Chicago City Ry. Co. v. Roach, 180 Ill., 174; Masonic Temple Association v. Collins, 210 Ill., 482; Chicago City Ry. Co. v. Bundy, 210 Ill., 39; Chicago, Rock Island & Pacific Ry. Co. v. Leisy Brewing Co., 174 Ill., 547.

Nor do we think that there was any reversible error in the rulings of the trial court on the admission of evidence. It is complained that certain improper testimony of a lad named Murphy was admitted and allowed to stand. Murphy claimed to have given the motorman of appellant's car signals of danger before the engine had reached Ashland avenue and while the car was between Fifty-second and Fifty-third street.

Murphy testified: "I ran to the sewing machine store (Hipshee's) on the east side of Ashland avenue about three doors from the corner" (of 51st street). "I was in the middle of the track waving my hat and hands in the northbound track. I started waving my hat and hands and hollering for them to stop, and the motorman told me to go to hell out of there or he would run over me. When I commenced to wave the car was about the width of four lots away from me. I don't know how wide the lots are. The motorman shut off his controller and pulled back his brake and told me to go to hell out of the way or he would run over me. He then turned back his controller and let the car go full

run again as fast as ever.  When he shut off his power and put on his brake he was in front of Hipshee's, and as he turned it on again he hollered at me.  How I knew he turned it on was, I could hear the sound of the thing, turning it back, and it started off all of a sudden.  I could not say how these cars were run there.  When I commenced flagging him he was running fast.  After I flagged it, it did not change speed.  He went kind of slower, and then he started faster again.  When he started faster he was right at School-man's wine house."  (Between Hipshee's and the corner.) "The next thing I saw was the engine coming towards the corner and the car as it struck the crossing.  The car ran into the hind end of the engine, threw the men off, and went right along.  The motorman went back into the door, kind of let go of this thing, and stepped back, and as he did, the jar of hitting the engine knocked him back in the middle of the car on his back.  *  *  *  the door was open and the jar threw him down—the jar of the engine.  *  *  *  There was no bell rung except the fire engine and hose cart.  Car bell never rang."

This testimony was contradicted in certain parts by the motorman himself, and the appellant's counsel argue for its entire untrustworthiness, but on the assumption that the story told by Murphy is a correct version of the occurrence, it would seem plain from reading it that Murphy's trying to stop the car and the motorman's treatment of the attempt, including his alleged remark (which remark is the testimony appellant objected to and unsuccessfully moved to strike out), were part of the *res gestæ*, almost contemporaneous with the accident and serving "to explain, illustrate, qualify, limit or characterize the act which is the subject of the inquiry." City of Chicago v. McKechney, 205 Ill., 372; Chicago v. City Ry. Co. v. Uhter, 212 Ill., 174.

As we had occasion to say in an opinion just filed in an-other case, absolute concurrence or separation in time is not the only test as to matter forming a part of the *res gestæ*. In the present case, assuming the truth of Murphy's story, it would seem impossible for him to give an account of the acci-

dent of which he was an eye-witness, which should be the whole truth that he was sworn to state, and omit these words of the motorman addressed to him.

Exception was taken by appellant to the statements of a Mrs. Schoolman, and of a police officer, Patrick Nugent, eye-witnesses of the accident, that the car was running at full speed up to the time of the collision. Counsel say it might have been competent for them to have testified that the car was going "fast," but that it was incompetent for them to use the term "full speed," because they were not shown to know what "full speed" was. We do not think there was any reversible error in allowing this testimony to stand. The expression which was used was practically in this connection, and in the mouths of these witnesses, tantamount to that which it is conceded would have been proper to admit. Nobody would understand from the statement that witnesses knew or were alleging that the limit of the car's motive power had been reached. It meant, in common parlance, that the car was going at the usual rate of street cars in that vicinity when not under some particular check. It could not have misled the jury. Cross-examination as to what was meant was available. The expression was not a happy one, and there might be circumstances under which its use would be so objectionable as to be reversibly erroneous, but to hold it so here would be unjustifiable.

It is further objected that it was erroneous to permit appellee to introduce in evidence certain rules and regulations of appellant's train service department. Those objected to in argument are as follows:

"When crossing prominent streets or passing cars or trains which are stopped or running slow on opposite track, drivers and gripmen will slacken speed, and in case of disabled brake connection, conductors will keep a sharp look out to help with handbrakes;"

"While train or car is in motion, the responsibility for safe running rests with the motorman, gripman or driver, who will never allow any unauthorized person to handle the levers, brakes, etc;"

"When vehicles of the fire department are in the street running to a fire, right of way must be given them as far as possible. Stop train until department has passed. When fire department has hose stretched across track, do not approach nearer than 200 feet, then notify general office at once by telephone, giving the line, place, etc."

There were other rules admitted—one ordering motormen and gripmen to sound a gong when approaching intersecting streets; one instructing them to have their cars under complete control when approaching street railroad crossings, and not to run their cars at greater speed than four miles per hour for at least 100 feet approaching the crossing; another to the same effect, that the car should be under full control when approaching intersections in order to avoid collisions, and including a statement that "apparatus of the fire department, police department, ambulances, etc., have the right of way over street cars."

The discussion as to the admission of these rules was out of the hearing of the jury, but those admitted were read to them. Counsel for appellant asked and secured from the court the following instruction concerning-them:

"The court instructs you that the rules of the defendant company which were received in evidence were not admitted by the court as substantive grounds of recovery, but only as bearing upon the question of the care exercised by defendant's employees."

The evidence showed that both the deceased and the motorman in- charge of appellant's car knew these rules. We think on reason and authority that they were therefore admissible and competent, not only for the purposes mentioned by the trial judge, but also as affecting the question of contributory negligence on the part of the deceased. Certainly his view of the speed with which his engine could safely be hurried to a fire would be properly modified by his knowledge of what, under these rules, he had a right to expect from the street car service. C. & A. R. R. Co. v. Kelly, 182 Ill., 267; C. & St. P. & K. C. Ry. Co. v. Ryan, 165 Ill., 88; L. S. & M. S. Ry. Co. v. Ward, 135 Ill., 511.

The objection of appellant is especially directed to portions of the rules said to be inapplicable and irrelevant under the facts of this case.    The inapplicable and immaterial matters seem to have been portions of entire paragraphs which contained pertinent propositions, and we do not see how the appellant could have been harmed by their admission.

Complaint is made of improper remarks before the jury by counsel for appellee and by the court.    The first alleged instance is a remark in the opening address of appellee's counsel to the jury,—that the company "had made some arrangements" with the three other men on the engine "of some kind."    Counsel was promptly interrupted by appellant's counsel, and rebuked by the court, and the jury informed that they must pay no attention to the statement.    The remark was improper and it is true, as was said in The Fair v. Hoffman, 209 Ill., 330, that the interference and adverse ruling of the court "do not always entirely cure the injury" of such improper remarks; but it is also true, as laid down in the same case, that "unless it is apparent from the record that some injury was suffered or did likely result by reason of such remarks, they will not be considered as reversible error."

We do not think that it is apparent from the record in the present case that injury resulted from this remark so promptly rebuked and withdrawn from the attention of the jury, or that, as urged by appellant, the subsequent conduct of appellee's counsel or of the court, lent any additional force or effect to it.

The second instance of alleged misconduct is that the trial judge announced at a certain point in the trial, and during an afternoon session, that he would adjourn if necessary to allow plaintiff's counsel to secure the attendance of a desired witness.    This was not improper or injurious to anybody. It was in the exercise of the trial judge's undoubted discretion in the interest of a full investigation of the facts.

The third instance of alleged misconduct is in the court's reproving counsel for appellant, during his final argument, for persisting in some course of conduct about reading from

City Railway Company v. McDonough.

notes, the court saying: "I never approve of a lawyer having a manuscript before him when speaking to a jury," and characterizing as "a tricky evasion" of this rule something not exactly perhaps made clear by the record. We do not feel called upon to express any view of our own about the propriety or impropriety of counsel referring to stenographic notes and reading excerpts therefrom in his argument. The trial court must be allowed discretion in such matters in the conduct of a trial in the interest of promptness and efficiency, and if he announces a rule not wholly unreasonable about arguments, counsel should yield without improper persistence. It does not appear here, from an inspection of the record, that this passage between counsel and court, or the ruling of the court, was likely to have prejudiced the jury, or had any effect on them. Our conclusion is, therefore, that unless the verdict was so clearly and manifestly against the weight of the evidence that the court below should have granted a new trial, and that we should reverse this judgment because it did not, there is no justification for our setting it aside.

It was hardly necessary for counsel for appellee to enforce upon us the respect due to the verdict of a jury on questions of fact, or for those for appellant to insist upon our obligation, on their complaint, to examine the record to ascertain if such verdict is not contrary to the manifest weight of the evidence and to act accordingly. We are too frequently reminded of both duties to be likely to forget either.

In this cause, as we have indicated, we regard the issues of fact as close and doubtful. The evidence was to some extent conflicting. We have very carefully examined it all, but it would be of little service, we are convinced, to discuss it in detail and we shall not do so. We shall only mention a few of its most salient features. Three differing hypotheses seem to us possible under this evidence in different views of it and according to the credence given to different portions of it: First, that both the deceased and the appellant's servant, the motorman of the colliding car, were guilty of negligence; second, that the deceased was guilty of negligence, but

not the motorman; and third, that the motorman, but not the deceased, was negligent. A fourth hypothesis indeed, that neither party to the collision was negligent, but that it was, under the circumstances, an inevitable accident, while both deceased and motorman were in the performance of their respective duties exercising due care, may not be excluded, although it is hard to conceive of such a collision as resulted in the death of McDonough as necessary or unavoidable. But in any event it is, of course, only if the third hypothesis suggested can be sustained by evidence in the case, and is not against the manifest weight of all the evidence heard, that the verdict of the jury can stand.

Appellant insists that the third hypothesis is inadmissible, that the evidence clearly establishes either the first or the second. It is undeniable (and indeed a denial is not attempted) that the fire engine was running very fast—"at a gallop," "as fast as they could"—along 51st street and over the Ashland avenue crossing at the time of the collision, and that the speed was under the control of the deceased, who was in command of the engine crew. It is therefore argued by appellant that the deceased was violating an ordinance of the city of Chicago, which was introduced in evidence, and consequently was *prima facie* guilty of negligence. The ordinance is as follows: "No hose carriage, hook and ladder carriage, or engine shall be drawn faster than a walk on its return from a fire or an alarm of fire, nor shall any such carriage or engine be drawn on any sidewalk opposite a paved or planked street, nor shall any such carriage or engine be drawn *to* a fire or alarm of fire in a manner calculated to endanger the safety of persons or property in the streets or alleys of said city under the penalty of not less than five dollars nor more than twenty-five dollars to be paid by the person or persons committing the offense."

In the case of Morse v. Sweenie, 15 Bradwell, 486, this court, speaking through Judge McAllister, in case of a collision between the plaintiff's carriage and a fire engine under the control of the defendant, held that in view of this ordinance an instruction which was based on a theory that the

City Railway Company v. McDonough.     ·

fire department going to a fire had "rights to the use of the streets not only superior to but exclusive of those appertaining to other citizens," which declared that it had "a right to proceed at any rate of speed the exigencies of the situation demanded," and contained "no hypothesis as to the exercise of any degree of care or prudence" on the part of the firemen, was erroneous. No such instruction was given in this case. In many instructions asked by the appellant the jury were told that the plaintiff could not recover if the evidence showed any want of care or prudence on the part of the deceased which proximately contributed to his injury, and were specifically instructed also that under the ordinance introduced it was the duty of those in charge of the fire engine in question, in answering the alarm of fire on the occasion in question, not to drive said fire engine "in a manner calculated to endanger the safety of persons or property in the streets or alleys of said city." It is our opinion that these instructions stated the law sufficiently favorably to the defendant, and properly left to the jury the question of fact whether or not the engine was, under the circumstances, going to the fire "in a manner calculated to endanger the safety of persons or property in the streets or alleys of the city." The circumstances would properly include the nature of the duties of the engine crew, their knowledge of the appellant company's rules, their acquaintance with the ability of motormen to stop cars quickly, and all the material surroundings.

It is to be noted that no maximum rate of speed allowed is fixed by the ordinance. For us to hold as a matter of law that because an engine was going at a high rate of speed to a fire—higher even than would be justifiable or allowable or perhaps prudent and careful in a private carriage—its crew were therefore violating this ordinance and guilty of negligence, would tend to paralyze the necessary agencies for saving life and property in a city that has had its full experience of insufficient fire protection.

If the mere fact of a high rate of speed does not in itself prove contributory negligence on the part of deceased, the existence of such negligence must be predicated on the propo-

sition that the driver under his control, and in obedience to his directions to go fast, recklessly tried to pass in front of the car, although he saw or might have seen it to be dangerous, or on the proposition that the engine under deceased's direction was going so fast and the horses had been lashed into such a speed that the driver could not and did not control them as he reached the crossing and saw the approaching car.

There is some evidence that might be held to justify one or the other of these hypotheses. Thus Mesbauer, the driver of the engine, testified in his direct examination, "I was going to the fire just as I always do, and when I got to 51st street I happened to see this car and I see that I couldn't make it,—and I could make it, I thought, and I went, and it struck me in the tail end of the engine," which might well by itself be held to show a reckless willingness to take chances knowing them to be doubtful. But the same witness swore just as positively on cross-examination that his horses had practically cleared the track the car was coming on by the time he saw the car, which is entirely inconsistent with such a theory.

The jury had before them seventeen other eye-witnesses of the accident, and heard their testimony. They were properly, carefully and fully instructed as to the duty of the driver of the engine in approaching this crossing to use caution, prudence, vigilance and foresight to avoid collision, and we cannot say that there was any clear preponderance of evidence against the finding of the jury implied in their verdict that the deceased and the driver under his supervision and control were guilty of no contributory negligence.

If the question of the contributory negligence of the deceased was for the jury, so also was that of the appellant company through its servant. It is as to this that the evidence most conflicts. In the several hundred pages of it are diverse statements, from which ingenious and forceful arguments are drawn on both sides.

It is certain, however, that the engine reached the intersection first, and that the car struck it behind its centre.

City Railway Company v. McDonough.

Witnesses say that at a distance on Ashland avenue within which it would have been easy to stop the car, they heard the gong of the approaching engine in 51st street and saw the passage of the hose cart preceding the engine. There was evidence tending to show that the motorman was warned of danger, and recklessly treated the warning. There was evidence tending to show that the motorman, at a distance from 53rd street sufficient, if he had proper control of his car, to have enabled him to stop it before reaching there, could and would, had he been as watchful and vigilant on approaching the crossing as his instructions ordered him to be, have seen the engine approaching.

The strength of this evidence and the credibility of the witnesses were for the jury. We cannot say that the finding they made was against the clear preponderance of all the evidence adduced, and the judgment of the Circuit Court is affirmed.

*Affirmed.*

Mr. Justice Ball, dissenting:

The deceased knew the streets that the engine was traversing, for he had ridden along and over them many times. He knew that a double track street railway lay in Ashland avenue, along which the cars of appellant were accustomed to come and go with great rapidity. He knew that 51st street from Marshfield avenue to Ashland avenue was built up on each side, so that, until the engine came within 100 feet of the tracks in Ashland avenue, he could not see north or south along that avenue. He knew that a car coming from either direction might be nearing the crossing at 51st street at the instant the engine should come from that street into the avenue. Yet, knowing these things, and having full control of the engine—for he was the lieutenant in charge—as soon as the horses had made the turn from Marshfield avenue into 51st street he urged them on, saying to the driver, "Keep on going; go on; keep on going." As a result the horses galloped east on 51st street, going faster and faster as they neared the fatal crossing, until their speed was so great that they could not be stopped before they reached the crossing af-

ter the engine had come to a point where the deceased could see north and south along Ashland avenue.

The rights of the engine and of the car at this crossing were equal. Each was bound to use ordinary care to avoid a collision at that point. The conduct of the deceased directly contributed to the happening of this accident. There was a want of ordinary care upon his part. Under all the authorities, where the rights of two parties are equal, and a collision occurs through the contributory negligence of the party injured therein, he cannot recover damages from the other party, even though the latter was also guilty of negligence which directly contributed to the injury. Aurora B. Ry. Co. v. Grimes, 13 Ill., 585; C. & M. Ry. Co. v. Patchin, 16 Ill., 202; C. & G. U. Ry. Co. v. Fay, 16 Ill., 558; C. & A. Ry. Co. v. Gretzner, 46 Ill., 83; Kepperly v. Ramsden, 83 Ill., 354; W. Chicago St. Ry. Co. v. Linderman, 187 Ill., 468; C. B. & Q. Ry. Co. v. Dougherty, 12 Ill. App., 192; City of Alton v. English, 69 Ill. App., 198; Chicago C. Ry. Co. v. Canevin, 72 Ill. App., 84.

Again, the deceased just before and at the time of the accident was violating the ordinance relating to the manner in which engines may be driven to a fire. Our courts have declared that one who is injured while in the act of violating an ordinance cannot recover for such injuries. Morse v. Sweenie, 15 Ill. App., 486; Maxwell v. Durkin, 86 Ill. App., 257; U. S. Brewing Co. v. Stoltenberg, 211 Ill., 537.

It will not do to say that the deceased and his men were responding to an alarm of fire, and therefore they had the right to traverse the streets at a high and dangerous rate of speed. Such is not the law. The streets are for the use of all. Every one passing along them must use due care not to injure another who is lawfully upon them. In the use of our streets there is not one rule for the fire engine, a second for the automobile, a third for the carriage and a fourth for the pedestrian. We are all under the reign of the same law, while upon a public highway, whether we walk or ride, and whether our errand is one of pleasure, of private business, or of public concern. Until the legislature or the common

council see fit to grant to fire engines "the right of way," they are bound by the same law which governs the humblest vehicle.

For the reasons thus briefly stated, I am compelled to dissent from the opinion of the majority of the court.